IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

THERESA FORTENBERRY and TRALVIS
FORTENBERRY, d/b/a CARING HANDS
PERSONAL CARE HOME                                          PLAINTIFFS

v.                                                    CAUSE NO. 1:16CV320-LG-RHW

CITY OF WIGGINS, MISSISSIPPI                                DEFENDANT

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are the [89] Motion for Partial Summary Judgment

filed by Plaintiffs and the [91] Motion for Summary Judgment filed by Defendant in

this housing discrimination case.  The issues have been fully briefed.  After due

consideration of the submissions, the record, and the relevant law, it is the Court's

opinion that Plaintiffs' Motion should be denied, and the Defendant's Motion should

be granted as to the Fourteenth Amendment claims and denied as to the federal

housing statute claims.  Additionally, the Court will deny the plaintiffs' [105]

Motion to Strike the defendant's rebuttal memorandum.

BACKGROUND

Theresa and Tralvis Fortenberry, doing business as Caring Hands Personal

Care Home ("Fortenberry"), leased a property in June 2015 to use as a personal care

home for disabled people in Wiggins, Mississippi.  (Compl. 2, ECF No. 1).  The

property had been used in a similar manner since the home was constructed in

1999-2000.  From 2010 to 2013, the property served as the Christian Fellowship

Home, housing individuals with drug addictions.  In 2014, a lessee of the property

was denied a certificate of occupancy from the City of Wiggins.  Fortenberry alleges that the 2014 lessee intended to use the property for the same purpose it intends, but the application was denied because there was no fence surrounding it.  (Compl. 7, ECF No. 1).  When Fortenberry applied for its own certificate of occupancy, it was informed that "a 'visually solid fence 6 feet in height constructed along the length of the property line adjacent to the use to be screened'" would be required.  The City cited Section 5.3.7 of the Wiggins Land Development Code Ordinance, adopted in 2013, as the basis for its decision.  (Compl. 4, ECF No. 1).  The portions of the Section relevant to this litigation read:

### 5.3.7 Required Screening for the Protection of Residential Areas

A.    Intent.  This section requires screening to be provided and maintained when non-residential uses are being developed or expanded adjacent to residential uses and when higher density residential uses are being developed or expanded adjacent to lesser density residential uses.

B.    Required Screens.  All commercial or industrial uses which are located adjacent to a lot zoned A-R, R-1, or R-2, R-3, R-4 shall be provided with screening conforming to the design standards outlined below . . . .

C.    Screening Design Standards.  Screening barriers shall consist of a visually solid fence six feet in height constructed along the length of the property line adjacent to the use to be screened.

. . .

Landscaping in the form of evergreen shrubs may be substituted for the fence, and if so shall reach a minimum height of 6 feet within three years of planting . . . .  Shrubs shall be planted not greater than 4 feet apart.  Existing trees and shrubs may also count towards satisfying the screening requirements, provided they meet the standards specified herein.

(Def. Mot. Ex. 7, at 56, ECF No. 91-7).

Fortenberry appealed the fence requirement to the Planning Commission, but contends it was "not afforded complete and impartial treatment" at the Commission's October 5, 2015 public meeting.  (Compl. 5, ECF No. 1).  The Commission rejected Fortenberry's argument that the existing trees and shrubbery at the perimeter of the property satisfied the residential screening requirement, and upheld the land use administrator's decision to deny the certificate of occupancy by a four-to-one vote.  An appeal of the Commission's decision to the Board of Aldermen resulted in a unanimous vote upholding the decision.  (*Id.* at 6).

Fortenberry alleges that Wiggins had no reasonable basis for denying the certificate of occupancy, and "no legal basis for the process which Fortenberry was forced to endure." (*Id.* at 5).  Fortenberry's Complaint includes claims under Title II of the Americans With Disabilities Act, Section 504 of the Rehabilitation Act, the Fair Housing Amendment Act, and 42 U.S.C. § 1983 for violation of Fourteenth Amendment Equal Protection and Substantive Due Process rights.  The City's summary judgment motion seeks judgment as a matter of law regarding each of Fortenberry's claims.  Fortenberry seeks partial summary judgment on the issue of whether Section 5.3.7 should have been applied to the property at all.

DISCUSSION

## 1. Application of Land Development Code Ordinance § 5.3.7

Fortenberry argues in its Motion for Partial Summary Judgment that the City erred by applying the residential screening requirement to the personal care home property.  According to Fortenberry, Section 5.3.7 applies only to "new non-

residential buildings" by operation of Section 5.3.1, titled "Standards for Commercial Design Required."  (Def. Mot. Ex. 7, at 49, ECF No. 91-7).  Fortenberry argues that its personal care home is not "new," since it has been in place since 1999.  Accordingly, Fortenberry asserts that it has been improperly compelled to comply with the residential screening requirement, and attaches testimony from individual board members indicating that they knew the building was not "new." (*See* Pl. Resp. Mem. 6-12, ECF No. 90).  From this, Fortenberry concludes that the City improperly applied Section 5.3.7 to its property.

The City responds that Fortenberry never raised this issue during the appeal process, and therefore it should be dismissed as unexhausted.  Alternatively, the City argues that Fortenberry misinterprets the Ordinance, and the individual board members do not speak for the City.

In its reply, Fortenberry argues that it need not exhaust administrative remedies prior to filing a lawsuit for violation of federal statutes and its Constitutional rights, and cites a number of cases standing for that proposition. The Court agrees with Fortenberry that exhaustion of state remedies is not required in this case.  *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 961 (7th Cir. 2004) (exhaustion of state remedies for due process claim only required when the plaintiff alleges a due process violation in connection with a constitutional takings claim violating the Fifth Amendment); *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 125 (1979) (a plaintiff filing under [the FHA] may proceed directly into federal court, deferring neither to the Secretary of Housing and Urban Development

-4-

nor to state administrative and judicial processes).

Nevertheless, Fortenberry's new argument is without merit. First, the Court disregards the deposition testimony of the Aldermen. Regardless of the beliefs or knowledge of any individual Alderman, the Board of Aldermen speaks and acts only through its minutes. *See Nichols v. Patterson*, 678 So. 2d 673, 676-77 (Miss. 1996). The Board determined that Section 5.3.7 applied to the Fortenberry property and the existing plantings did not satisfy the screening requirement therein. The Court is to give "great weight" to the local authorities' construction of an ordinance, unless it is "manifestly unreasonable." *Hatfield v. Bd. of Supervisors of Madison Cty.*, No. 2016-CP-00616-SCT, 2017 WL 3452426, at *1 (Miss. Aug. 10, 2017).

The City's conclusion that Section 5.3.7 applies to the Fortenberry property is reasonable. Fortenberry was required to obtain a Commercial Certificate of Occupancy to operate the personal care home because the building had undergone a change of business ownership. (Def. Mot. Ex. 7, at 28, ECF No. 91-7). The certificate of occupancy would issue "only if the proposed [ ] use is in compliance with the provisions of this ordinance . . . ." (*Id.*). The provision identified by Fortenberry, Section 5.3.1, imposes standards for "all new non-residential buildings and accessory buildings." (*Id.* at 49). But further along in Article 5 is the residential screening provision, which requires a six-foot fence or a suitable alternative "when non-residential uses are being developed or expanded adjacent to residential uses and when higher density residential uses are being developed or expanded adjacent to lesser density residential uses." (*Id.* at 56). This is applicable

to the Fortenberry personal care home.  The building was not "new," but the commercial use of the property was "being developed" adjacent to a residential area. The City could reasonably conclude that residential screening was required for both "new non-residential buildings" and "when non-residential uses are being developed."  Accordingly, the City did not err by requiring Fortenberry to comply with the residential screening requirement of Section 5.3.7 prior to issuing a certificate of occupancy.

## 1.  Equal Protection and Substantive Due Process

Fortenberry's Fourteenth Amendment claims, brought pursuant to 42 U.S.C. § 1983, are for violation of the equal protection and substantive due process provisions.  Fortenberry does not bring the usual zoning challenge, as it does not argue that the City cannot properly require screening pursuant to the Ordinance. Fortenberry's argument is that "[t]he granting of the certificate of occupancy to Plaintiffs should have been a given.  The property, as it existed at the time of the application met the requirements of the code.  The existing trees and shrubs on the property satisfied the screening requirements."  (Pl. Resp. Mem. 5, ECF No. 100). Fortenberry argues that the City erred in concluding that the property did not have screening that complied with Section 5.3.7, and that the City reached this conclusion for discriminatory reasons.

### a.  Equal Protection

Fortenberry argues that the City has unequally applied its Ordinance by requiring it to build a fence rather than accept the existing plantings as a sufficient

screen.  According to Fortenberry, the City has required a fence, not to obtain compliance with the screening requirement, but to "confine[ ] and segregat[e][ ] the mentally or physically disabled residents of Plaintiffs' proposed home."  (Pl. Resp. Mem. 23, ECF No. 100).  Fortenberry argues that an improper motive for requiring a fence is shown by the City's concerns about preventing residents from wandering off of the property.  For example, the City's engineer stated that "the fence should restrict movement from the building to the surrounding residential areas," perhaps utilizing locked gates, and that "you should make [Fortenberry's certificate of occupancy] conditional on following that plan and keeping patients on the property." (Pl. Resp. Ex. L, ECF No. 100-12).

Fortenberry argues that the City has enforced the fencing requirement for properties serving the aged, or physically and mentally disabled, but allowed plantings for the most high-impact commercial businesses in Wiggins.  To bring such a selective enforcement equal protection claim, Fortenberry must show that it has been treated differently from others similarly situated, and the difference in treatment was "motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right*." Bryan v. City of Madison, Miss*., 213 F.3d 267, 277 (5th Cir. 2000); *see also L&F Homes & Dev., LLC v. City of Gulfport*, 538 F. App'x 395, 402-03 (5th Cir. 2013).

In support of its argument that Fortenberry cannot show that it has been treated differently, the City submitted the affidavit of its Mayor, who asserts that many types of businesses have been required to comply with the screening

requirement by erecting a fence, including "box retail stores, a dirt pit, playground, the Fire Department, a rehabilitation center, a nursing center, doctors' offices, a supermarket and a child day care center," as shown on attached lists.[1] (Def. Mot. Ex. 8, at 2, ECF No. 91-8).  Fortenberry argues in response that the lists show differential and discriminatory enforcement of the fencing requirement, since none of the businesses servicing elderly, disabled or otherwise impaired people have been allowed to use plantings rather than a fence for residential screening.

Reviewing the lists, there are four businesses that have been allowed to use existing vegetation as residential screening: McDonalds, Sonic, Dollar Tree, and WalMart.  (Pl. Resp. Ex. K 3, ECF No. 100-11) (ECF pagination).  Seventeen businesses used a fence, or a combination of fencing and vegetation, for residential screening.  (*Id*. at 1).  Fortenberry points to three of these seventeen[2] to show that the seventeen are "the most low impact residential in nature uses," but that conclusion is unwarranted from the information given.  Some of the seventeen appear just as high-impact and non-residential as McDonalds or WalMart, such as the Piggly Wiggly grocery store and the various other retail establishments.  Without more information, all that can be gleaned from these lists is that about

---

[1]  The Mayor's affidavit indicates that it includes two exhibits listing these businesses, but there are no exhibits to the affidavit.  (Def. Mot. Ex. 8, at 2 (¶4), ECF No. 91-8).  What appear to be the two lists are attached to the plaintiffs' response as Exhibit K.  (ECF No. 100-11).

[2]  The three mentioned are the Azalea Gardens Nursing Center, South Mississippi Regional Center for Men, and South Mississippi Regional Center for Women.  (Pl. Resp. Mem. 24, ECF No. 100).

eighty percent of the commercial uses bordering residential zones have utilized a fence for screening.

Even if Fortenberry is considered part of a class that received different treatment under the Ordinance, there is no description of any of the properties on the lists, or information about what considerations went into the City's screening decisions for those properties.  For example, it is possible that none of the three properties Fortenberry seeks to group itself with had plantings around the perimeter or desired to use plantings.  It is also possible that some commercial properties had existing fences and the City was not asked to consider an alternative residential screen.  No conclusions can be drawn from the bare fact that the screening requirement was satisfied with a fence, and that is all that has been offered by Fortenberry.  The lack of comparator evidence prevents Fortenberry from showing that it has been treated differently from others similarly situated, either individually or as part of a group.  *See Craig v. City of Yazoo City*, 984 F. Supp. 2d 616, 626 (S.D. Miss. 2013), *citing, inter alia, L & F Homes & Dev., L.L.C. v. City of Gulfport*, 538 F. App'x 395, 403, 2013 WL 4017711, at *6 (5th Cir. 2013) (noting lack of comparator in selective enforcement claim); *Williams v. Riley*, 275 F. App'x 385, 390 (5th Cir. 2008) (holding in selective enforcement context that "a 'class-of-one' plaintiff must, at a minimum, show he has been intentionally treated differently from others similarly situated"); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (requiring proof of disparate treatment in addition to improper motive).  The City is entitled to summary judgment in regard to the

Fourteenth Amendment Equal Protection claim.

b.  Substantive Due Process

Fortenberry claims that the City has violated its right to substantive due process by enforcing the residential screening requirement against it in a way that discriminates against the elderly or handicapped persons expected to live in the personal care home.  Fortenberry does not argue that Section 5.3.7 is discriminatory on its face, only that unlike others, Fortenberry has not been allowed the option of using the plantings surrounding the property as the required screening from residential areas.  This claim overlaps the equal protection claim above to a significant degree, except for the aspect of the City's disallowance of the property's existing plantings for screening because the vegetation was not dense enough.  Since an "equal protection claim recast in substantive due process terms" cannot proceed, *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008), the Court construes Fortenberry's substantive due process claim to encompass only the City's action of finding the existing plantings inadequate to satisfy Section 5.3.7.

Even as limited, however, Fortenberry's substantive due process claim is without merit.  Whether the plantings surrounding the Fortenberry property are dense enough to satisfy the Ordinance presents only a question of state law, which is an inadequate basis for a substantive due process claim.  *See, e.g., G & H Dev., L.L.C. v. Benton-Par. Metro. Planning Comm'n*, 641 F. App'x 354, 358 (5th Cir. 2016) ("[I]t is not our task to determine whether their interpretation of the Code was correct."); *Boatman v. Town of Oakland*, 76 F.3d 341, 345 (11th Cir. 1996).

-10-

Even if it is wrong, a "municipal zoning decision 'comports with substantive due process if the action is rationally related to a legitimate government interest.'" *G & H Dev.*, 641 F. App'x at 358.  Here, the City had a legitimate interest in promoting the safety and welfare of the community, and its enforcement of the requirement for a screening fence is rationally related to this interest.

Furthermore, the language of the Ordinance mandates "a visually solid fence six feet in height," while evergreen shrubs "may be substituted," as may be "alternative screening plans."  (Def. Mot. Ex. 7 56, ECF No. 91-7).  This language gives the City discretion in considering or accepting any alternative to a six-foot fence, and "discretionary statutes do not give rise to constitutionally protected property interests."  *Horton v. City of Smithville*, 117 F. App'x 345, 347-48 (5th Cir. 2004); *see also Vineyard Inv., LLC v. City of Madison*, 757 F. Supp. 2d 607, 613-14 (S.D. Miss. 2010).  For these reasons, the City is entitled to summary judgment as to Fortenberry's substantive due process claim.

## 2.    Rehabilitation Act, the Americans with Disabilities Act, and the Fair Housing Act

The ADA, Rehabilitation Act, and the FHA all prohibit housing discrimination against qualified individuals with disabilities.  *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing 42 U.S.C. § 12131(1) and 29 U.S.C. § 794(a)); *A.B. v. Housing Auth. of South Bend*, 498 F. App'x 620, 622 n.1 (7th Cir. 2012).  This includes elderly individuals eligible to reside in an assisted-living facility.  *See, e.g., Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795-96 (6th Cir. 1996)

(holding requested accommodation by provider of housing to disabled elderly individuals was reasonable); *Assisted Living Assocs. of Moorestown, LLC v. Moorestown Twp.*, 996 F. Supp. 409, 415-16, 435 (D.N.J. 1998) (stating prospective assisted-living residents meet FHA definition of handicap); *Potomac Grp. Home Corp.*, 823 F. Supp. at 1295 (finding elderly group home residents clearly qualify as handicapped under FHAA).

Fortenberry argues that the City agrees there is "significant vegetation" around the property, and yet the City "ignored its own screening code requirements, past practices, and relevant evidence when [it] denied Plaintiffs' application for a certificate of occupancy." (Pl. Resp. Mem. 29, ECF No. 100).  According to Fortenberry, the City has applied a "heightened requirement" by requiring a six-foot fence before issuing a certificate of occupancy for the property.  (*Id.*).  This is a disparate-treatment claim, requiring Fortenberry to show that the City had a discriminatory intent or motive for its action.[3]  *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2513 (2015).

"The standards regarding disparate treatment claims under the ADA [and the FHA] are typically identical, and courts accordingly 'interpret them in tandem.'" *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013).  Since the Rehabilitation Act also shares a liability standard with the ADA, all three of these statutory claims are evaluated in the same way.  *See J.A.M. v.*

_____

[3]  Fortenberry expressly denies that it has made a reasonable accommodation claim under the FHAA.  (Pl. Resp. Mem. 30, ECF No. 100).

*Nova Se. Univ., Inc.*, 646 F. App'x. 921, 926 (11th Cir. 2016).

"In disparate treatment cases, a similarly situated disabled individual is treated differently because of his disability than less- or non-disabled individuals. The key element is discriminatory intent." *Edwards v. Gene Salter Props.*, 671 F. App'x 407, 408 (8th Cir. 2016) (citation omitted). The familiar three-step *McDonnell Douglas* approach is applied where no direct evidence of discrimination is available. *Id*. at 142-43, 120 S.Ct. 2097; *Norcross v. Sneed*, 755 F.2d 113, 117 & n. 5 (8th Cir. 1985). Alternatively, the plaintiff may "simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the defendant and that the defendant's actions adversely affected the plaintiff in some way. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) (citations omitted). Fortenberry's method of proof is direct evidence. In addition to the email noted above in which the engineer suggested requiring locks on the fence gates to confine residents, Fortenberry points to the comments of the Aldermen at the appeal hearing that focused on the characteristics of prospective residents.

The events leading up to the appeal hearing began with Fortenberry's application for a certificate of occupancy for the property in late July 2015. The City's Land Code Administrator advised Fortenberry on September 15, 2015, that a fence would be required before a certificate of occupancy would be issued. (Def. Mot. Ex. 12, ECF No. 91-12). Fortenberry responded with a letter asserting that this

requirement was met: "according to Wiggins Land [D]evelopment Code highlighted above, shrubbery is considered a type of screening.  The property . . . perimeter is covered with brush, trees and shrubbery that is adjacent to a zone R-1 lot as can be seen." (Def. Mot. Ex. 13, ECF No. 91-13).  This was unacceptable to the Land Code Administrator.  The Ordinance required evergreen shrubs planted four feet apart, and most of the plantings on the Fortenberry property were deciduous.  (Pl. Resp. Ex. E 16, 28, ECF No. 99-5).  The Administrator noted four evergreen shrubs, all at the front of the building "but not anywhere else."  (*Id.* at 27).  The photographs provided by both parties show primarily deciduous vegetation of varying density surrounding the property.  (Def. Mot. Ex. 1, 2, ECF Nos. 91-1, 91-2; Pl. Resp. Ex. O, ECF No. 100-15).  Since the property objectively does not have a fence or evergreen shrubs planted four feet apart, and Fortenberry did not propose an alternative screening plan, the true request here was for a variance.[4]

It appears that the City understood Fortenberry to be requesting relief from the screening requirement.  The City provides a short video from the beginning of the October 5, 2015 Planning Commission meeting, in which the City's Land Code consultant explains that the Commission must determine if Fortenberry would be required to comply with the screening requirement, and if not, the basis for finding that the requirement did not apply.  (Pl. Resp. Ex. C, conventionally filed).

---

[4]  The Wiggins Land Development Code Ordinance includes a procedure for requesting a variance, beginning at Article 4.11, but that was not utilized in this case.  (Def. Mot. Ex. 7, at 36, ECF No. 97-1).

-14-

Although the video ends at that point, there is no question that Fortenberry's request was denied, and the Land Code Administrator's decision was upheld. Fortenberry appealed this decision to the Board of Aldermen, arguing again that the vegetation surrounding the property satisfied the screening requirement. (Def. Mot. Ex. 16, ECF No. 91-16).

The City provided an audio recording, apparently made by Theresa Fortenberry, of the Board meeting at which the appeal was heard. (Pl. Resp. Ex. E, conventionally filed). Theresa Fortenberry spoke to the Board, stating that she intended to run the facility as close to a nursing home as possible. She related the effort and expense that had gone into obtaining the necessary approvals and permits. She stated that she did not know that a fence would be required until two to three months after she began with the process, and was therefore blind-sided by the requirement. She agreed with an unidentified Alderman that all of the other nursing homes in Wiggins had fences around them. Another Alderman related that he had been out to the property and found that the vegetation was open in the back. Generally, the comments of the Aldermen concerned the well-being and safety of the home residents. The major concern was the possibility that elderly residents, unable to care for themselves, would leave the property and encounter traffic on the nearby highway. One Alderman wondered if the City would be subject to any liability in those circumstances. Discussion was had about how Fortenberry would be able to keep tabs on all fourteen elderly residents when they could not be confined. It is clear that the Aldermen believed that a fence, rather than the

-15-

existing plantings, would be a more effective barrier to the residents leaving the property unnoticed.  At this point in the meeting, Theresa Fortenberry became angry and left.  In her absence, the Board denied the appeal.  (Def. Mot. Ex. 19, ECF No. 91-19).

A key element for proving discriminatory treatment is discriminatory intent. *See Gene Salter Props.*, 671 F. App'x at 408.  Relevant considerations for "discerning a [ ] discriminatory intent include the historical background of the decision particularly if it reveals a series of official actions taken for invidious purposes, departures from the normal procedural sequence, substantive departures, and the legislative or administrative history **especially where there are contemporary statements by members of the decision making body, minutes of its meetings, or reports.**"  *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 606 (2d Cir. 2016)(emphasis added).

The evidence of the Aldermen's recorded comments during the meeting, in addition to the City engineer's statements about keeping patients from wandering into the surrounding neighborhood, demonstrate that the disability of the home's prospective residents may have been a motivating factor in the City's decision to deny a certificate of occupancy.  On the other hand, it may be argued that these comments were motivated by a genuine altruistic concern for elderly residents, and intended to underscore the legitimacy of challenged city code requirements that the

-16-

Plaintiff clearly had not satisfied.[5]   Nonetheless, discriminatory intent is a question of fact.  Here, viewed in the light most favorable to the non-moving party, there is some evidence that the City's decision may have been based, at least in part, on an unlawful motive.  Therefore, a properly instructed jury will have to decide whether this evidence is sufficient to establish that the City acted with discriminatory intent.  *Thomas v. Napolitano*, 542 F. App'x 316, 319 (5th Cir. 2013) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 572 (1985) (stating that "a finding of intentional discrimination is a finding of fact"); *Pullman–Standard v. Swint*, 456 U.S. 273, 285-87 (1982) (reversing the Fifth Circuit and holding that discriminatory intent is a finding of fact)).  Accordingly, the City's Motion must be denied as to Fortenberry's claims under the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Housing Act, since each of these claims requires a finding of discriminatory intent.

## 4. Plaintiffs' Motion to Strike

Fortenberry moves to strike the City's rebuttal memorandum in support of its summary judgment motion because the total number of pages of briefing exceeds, by five, the limitation in the Local Rules.  *See* L.U. Civ. R. 7(b)(5).  Under the circumstances, the Court declines to exercise its discretion to strike the brief for exceeding the page limitation.  The transgression is minor and there is no prejudice

---

[5] Although "it is a violation of the [FHA] to discriminate even if the motive was benign or paternalistic." *Horizon House Developmental Servs., Inc. v. Upper Southampton*, 804 F. Supp. 683, 696 (E.D. Pa. 1992).

alleged by Fortenberry.  However, counsel is reminded to comply with memorandum brief page limitations in the future.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [105] Motion to Strike Defendant's Rebuttal is **DENIED**.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the plaintiffs' [89] Motion for Partial Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the defendant's [91] Motion for Summary Judgment is **GRANTED** as to the plaintiffs' Fourteenth Amendment claims brought pursuant to 42 U.S.C. § 1983, and **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 5th day of February, 2018.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE